## HALL, ET UX. *v.* THE BARLOW CORPORATION

[No. 358, September Term, 1968.]

*Decided July 29, 1969.*

The cause was heard before HAMMOND, C. J., and MARBURY, BARNES, McWILLIAMS, FINAN, SINGLEY and SMITH, JJ.

*Ferdinand J. Mack,* with whom were *Shadoan & Mack* on the brief, for appellants.

*Burton A. Schwalb,* with whom were *Arent, Fox, Kintner, Plotkin & Kahn, Bruce N. Goldberg* and *Sickles, Goldberg & Sickles* on the brief, for appellee.

BARNES, J., delivered the opinion of the Court.

The appellants, W. Luther Hall and Elizabeth M. Hall, his wife (the Halls), who were plaintiffs below, brought this action in the Circuit Court for Montgomery County against The Barlow Corporation, appellee and defendant below, for reformation of a purchase money note in the amount of $352,000.00. The question presented by this appeal is whether or not the Chancellor (Shure, J.) abused his discretion in declining to permit the Halls to amend their Bill of Complaint, after a demurrer filed by The Barlow Corporation, on the grounds of limitations and laches, had been sustained.

The allegations of the Bill of Complaint filed April 2, 1968, are substantially as follows:

By a contract dated July 31, 1964, the Halls contracted to sell to Milton A. Barlow (Milton) improved real estate owned by them in Montgomery County known as 5510, 5514 Prospect Street and 4501, 4503 High Street in Block 3 of the Friendship Heights Subdivision. A copy of the contract of sale of July 31, 1964, was annexed and incorporated in the bill of complaint by reference as Exhibit 1.

Under the terms of the contract of sale, the purchaser of the property of the Halls was to give them a purchase money note in the amount of $352,000.00 secured by a deed of trust on the property, payable in 10 equal annual installments, plus interest. The contract of sale also pro-

vided that its provisions survived the execution and delivery of the deed for the properties and were not to be merged in the deed and further that the contract might be assigned by Milton.

The contract of sale further provided that "The Barlow Corporation shall guarantee payment by endorsement of the purchase money note."

On or about January 22, 1965, the foregoing contract of sale was settled at District-Realty Title Insurance Corporation, 1413 Eye Street, N.W., Washington, District of Columbia. Title to the property sold was taken in the name of Prospect Properties, Inc., and the Halls alleged, upon information and belief, that Milton assigned the contract of sale to Prospect Properties, Inc. Milton "is president and director of both Prospect Properties, Inc. and The Barlow Corporation."

The purchase money note, annexed to the bill of complaint and incorporated by reference as Exhibit 2 "was not delivered to plaintiffs [the Halls] until on or about May 23, 1965, at which time plaintiffs executed a subordination agreement, subordinating the deed of trust securing the purchase money note" to a deed of trust securing the Riggs National Bank of Washington, D.C. in the aggregate amount of $13,500,000.00. Notwithstanding the provisions of the contract of sale, The Barlow Corporation "failed and neglected to guarantee by endorsement payment of the aforesaid purchase money note * * *." The Halls have made demands upon Prospect Properties, Inc. to pay the purchase money note, but it has not been paid and notice has been given to The Barlow Corporation. Demand has also been made upon the defendant corporation "to place upon said purchase money note its guarantee of payment as called for by the said contract, but the said Defendant has failed and refused so to do."

The failure of The Barlow Corporation to place its endorsement guaranteeing payment of the purchase money note was not discovered by the Halls until Jan-

uary, 1967, when the Trustees under the $13,500,000.00 deed of trust were about to commence foreclosure proceedings which have since been consummated. The Halls, on information and belief, alleged that Prospect Properties, Inc. "is without assets, is insolvent, and is unable to make any payments on account of the Plaintiffs' purchase money note." The Halls have only received $35,200.00 on account of the principal amount of the note and there is presently due on the note $316,800.00 with interest at 6% per annum from January 22, 1966.

The Halls prayed that (1) the purchase money note be reformed by requiring The Barlow Corporation to guarantee payment by endorsement of the note and (2) for further relief.

The purchase money note, already described in part in the allegations of the bill of complaint and attached as Exhibit 2, is headed "Secured by Deed of Trust" and then identifies that deed of trust. The principal amount of $352,000.00 is payable in 10 equal installments of $35,-200.00, the first installment being payable one year after date with interest on the unpaid balance at the rate of 6% per annum. The right to prepay the note in whole or in part is reserved, but there is no guarantee of payment by endorsement by The Barlow Corporation on the note.

The contract of sale, dated July 31, 1964, attached to the bill of complaint as Exhibit 1, recites that a deposit of $20,000.00 from Milton had been received as part payment for the purchase of the properties (described by block and lot numbers in the Friendship Heights subdivision) containing approximately 47,807 square feet, the purchase price being $600,000.00 of which Milton, as purchaser, agreed to pay $100,000.00 in cash at the time of settlement, of which amount the $20,000.00 deposit should be a part. The purchaser, Milton, agreed to take the properties subject to first deeds of trust of approximately $148,000.00 and, for the balance of deferred payment of $352,000.00, he agreed to execute a second deed of trust secured on the premises payable in 10 equal annual in-

stallments of principal plus interest, with the first payment due on the first anniversary of the note, with the privilege of prepayment in whole or in part at any time without penalty. The sellers, the Halls, agreed to give possession at the time of settlement, which would be at the office of the Title Company searching the title. Settlement would be within 60 days after rezoning is in effect or as soon thereafter as a report on the title could be secured if promptly ordered or survey if required. The contract of sale was not under seal.

Attached as an addendum to the contract of sale was a single sheet of legal size, single spaced "Conditions", signed by the Halls as sellers and Milton as purchaser. In relevant part they provide:

"(1) Property shall be zoned C-2.

"(2) Montgomery County Zoning Ordinance as presently administered by the Department of Inspections and Licenses, shall continue to permit in not more restrictive form Apartment-Hotel under the C-2 zoning classification.

"(3) Purchaser shall bear cost of rezoning in Appeal No. C-1353.

"(4) The purchase money note secured by a second deed of trust shall contain the following provisions:

(a) The Note Holders agreed to subordinate this Deed of Trust to a bona-fide bank, insurance company, savings and loan association or similar financial institution construction loan and the original permanent loan.

(b) The Barlow Corporation shall guarantee payment by endorsement of the purchase money note.

(c) Note Maker shall purchase and deliver to Note Holders at time of subordination a fully paid one-year term non-cancellable life insurance policy upon

the life of Milton Barlow, in the amount of the unpaid balance of said note, payable upon his death to the Note Holders. In the event the building to be erected upon the subject property is not substantially completed within said one-year policy period, the policy shall be extended for additional periods of not less than three months each until the said building is substantially completed.

(d) Note Maker shall select a General Contractor fully experienced and capable of erecting the proposed building not later than the closing of the construction loan. Said contractor shall be under contract to complete construction of building in accordance with plans and specifications within a period not to exceed two (2) years and shall give customary guarantees of performance of said construction contract to both the Note Maker and Note Holder.

(e) Note Maker shall give to Note Holder assurances of performance to the extent as may be required by the Construction Lender.

(f) Holder of the construction loan or the original permanent loan shall not institute proceeding to foreclose until they shall have first given written notice, mailed postage prepaid, 45 days prior thereto to the last known address of the Note Holders.

(g) Note Maker, prior to commencement of construction, shall give evidence of financial ability to complete the building project, if the loan commitment

does not exceed construction contract cost.

(h) Note Maker represents that Milton Barlow now is and will continue as the chief executive officer of Note Maker until the substantial completion of the building to be erected upon subject property.

\* \* \*

"(6) This contract may be assigned, without personal liability to Milton Barlow."

On May 28, 1968, The Barlow Corporation filed a demurrer upon two grounds only:

"1. That the Bill of Complaint is barred by the Statute of Limitations.

"2. That the Bill of Complaint is barred by Laches."

A hearing was requested and an argument was made by the parties before the Chancellor on the demurrer. On November 8, 1968, the Chancellor filed a written opinion indicating that in addition to the claim that the suit was barred by the Statute of Limitations and by Laches, The Barlow Corporation "by Supplemental Memorandum urges that the Bill of Complaint must fail because there is an adequate remedy in law, and equity therefore lacks jurisdiction." The Chancellor further indicated that, in his opinion, the three year Statute of Limitations, Code (1957), Art. 57, § 1, was a bar to the suit inasmuch as the cause of action accrued on January 22, 1965, and suit was not filed until April 2, 1968, or more than three years after the cause of action accrued, and also, that the Halls were guilty of laches, having "accepted the Note without endorsement and proceeded under its terms thereof for a period of years. There was no impediment to ability to take action at any time after settlement." The Chanceller was also of the opinion that there was no showing that the remedy at law was not adequate

stating that, "While the suit asks for endorsement at this time it is solely a damage action for money alleged to be due because of defaults upon the Note." The Chancellor then entered an order on November 8, 1968, that the demurrer be "sustained without leave to amend."

Thereafter, on November 15, 1968, the Halls filed their motion for reconsideration of the opinion and order of November 8th alleging in part that:

"Plaintiffs have alleged in their Bill of Complaint facts which while permitting the Court to make the finding as to laches and limitations that it has, do not set forth all of the facts that they have at their command which they may use in asserting their claim against Defendant. Specifically, on or about May 21, 1965, the attached letter was signed by Milton A. Barlow and delivered to Norman M. Glasgow, then counsel for Plaintiffs, in which letter there is contained a repetition of the promise to have the note the subject matter of this action endorsed by Barlow Properties, Inc. The Bill of Complaint in this action was filed April 2, 1968, and consequently the action is not barred by limitations because it was filed within three (3) years from the renewed promise."

The attached letter of May 21, 1965, addressed to the then counsel for the Halls is as follows:

"Under the addendum to the above sales contract, Dr. and Mrs. Hall agreed to subordinate their loan under provision 4 thereof and there is submitted herewith a request for such subordination together with the necessary documents to accomplish the same.

"Paragraph 4 (a)—This shall be accomplished when the subordination agreement is executed by the Halls. The necessary documents relating to the placing of the construction and original

permanent loan have been transmitted to you for your review and approval.

"Paragraph 4(b)—It is my understanding that the Halls will produce at settlement their note to which there will be affixed an endorsement by Barlow Properties, Inc. guaranteeing payment.

"Paragraph 4(c)—A fully paid one year non-cancellable life insurance policy upon the life of Milton Barlow in the amount of the unpaid balance of the note payable to note holders delivered herewith. Should the construction period for the buildings extend beyond the one year period the life insurance policy shall be extended during period of construction until the building is substantially completed.

"Paragraph 4(d)—The general contractor for the project is the George A. Fuller Company of New York City, a nationally recognized construction company. A copy of the contract to be executed for the completion of the building has been furnished to you as well as a draft of the letter by the George A. Fuller Company guaranteeing completion of the project.

"Paragraph 4(e) — The building and loan agreement with the Riggs National Bank will be executed when the plans and specifications are completed and the guaranteed cost of the building is established. This agreement, together with the guarantee of completion by the George A. Fuller Company, are the documents required by the construction lender.

"Paragraph 4(f)—The deed of trust securing the construction and permanent loan shall provide for a 45-day period of notice prior to foreclosure.

"Paragraph 4(g)—The loan commitment in the amount of $13,500,000 exceeds the cost esti-

mate for construction prepared by the George A. Fuller Company to be $12,100,000. Other costs for architectural engineering, etc. total $1,-100,000. There is enclosed a copy of a letter by George A. Fuller Company estimating the building cost to be $12,100,000.00. There is also enclosed a schedule of 'other costs.'

"Paragraph 4(h) — I represent that I, Milton A. Barlow am President of Prospect Properties, Inc. and will continue as such until the substantial completion of the building to be erected upon the subject property.

> "Respectfully submitted,
> "PROSPECT PROPERTIES,
> INC.
> "/s/ Milton A. Barlow,
> "President."

The Barlow Corporation filed an "opposition" to the motion of the Halls for reconsideration, and after argument, the Chancellor, on December 6, 1968, gave an oral ruling as follows:

"Gentlemen, as you may recall I had this case in my office for consideration for several months and considered the matter carefully. This was demurrer and it was decided purely and simply on the basis of the legal principles involving demurrers, to wit: That you assume that which was pleaded is factually correct if proven and you decide whether there is a cause of action.

"This is a suit against the Barlow Corporation. While I alluded to another matter, I was clearly convinced principally that the statute began to run immediately and the other matters alluded to by both parties are actually extraneous to any hearing on a demurrer. It was suggested this new letter is not by one of the defen-

dants but by Prospect Properties through an agent.

"I am of the opinion that this matter is one of those rare situations where they cannot make out a case in equity, and this is why I sustained without leave to amend. After careful consideration, I think my original ruling must stand."

A timely appeal was taken from both the Order of November 8th and the "Ruling" of December 6, 1968.

The Halls present two questions to us on this appeal:

1. Did the Chancellor err by abusing his discretion in not allowing the Halls to file an amended Bill of Complaint?

2. Did the Chancellor err in concluding that the three year statute of limitations barred the cause of action of the Halls for reformation of the purchase money note?

Inasmuch as we have concluded that the Chancellor abused his discretion in not allowing the Halls to file an amended bill of complaint, we do not reach the second question raised by the Halls, except as its subject matter may relate to our discussion of the first question.

It is well settled that the allowance of leave to amend is within the sound discretion of the trial court and that we will not disturb the lower court's ruling unless it has clearly abused its discretion.

As Judge Oppenheimer, for the Court, stated in *Town of Somerset v. Montgomery County Board of Appeals*, 245 Md. 52, 61, 225 A. 2d 294, 300 (1966):

"We have repeatedly held that an order denying or allowing an amendment will not be reversed in the absence of a clear showing of an abuse of discretion." (citing prior Maryland cases)

It is also well settled that amendments are to be fully allowed to the end that cases will be tried on their mer-

its rather than upon the niceties of pleading. Maryland Rule 320 d 1 (b) expressly provides, in part, that "An amendment shall not be made without leave of court but leave to amend *shall be freely granted in order to provide justice.*" (Emphasis supplied.)

As Judge Horney, for the Court, aptly stated in *Standard American Homes, Inc. v. Pasadena Building Co.*, 218 Md. 619, 624-25, 147 A. 2d 729, 732-33 (1959) :

"Whenever a demurrer to a bill or other pleading is sustained, an amendment may be allowed by the court in its order sustaining the demurrer without the necessity of a motion or petition therefor, but whether an amendment shall be allowed is always within the sound discretion of the court. Maryland Rule 320 d 1 (e). However, if seasonable application is made therefor, a court will ordinarily grant leave to amend at any time before a final order is entered so that a case may be tried on its merits. Rule 320 a 1, 320 c 1, 320 d 1 (b)."

This represents the trend of the modern cases. See, e.g., *Foman v. Davis*, 371 U. S. 178, 83 S. Ct. 227, 9 L. Ed.2d 222 (1962) ; *Matsumato v. Arizona Sand and Rock Co.*, 80 Ariz. 232, 295 P. 2d 850, 56 A.L.R.2d 1385 (1956) ; *Norway Water Dist. v. Norway Water Co.*, 139 Me. 311, 30 A. 2d 601 (1943) ; *Kleinknecht v. McNulty*, 169 Neb. 470, 100 N.W.2d 77 (1959) ; *Weiler v. Ross*, 80 Nev. 380, 395 P. 2d 323 (1964) ; *Hermes v. Markham*, 78 N. D. 268, 49 N.W.2d 238 (1951) ; *City Electrical Services & Equipment Co. v. Estey Organ Co.*, 116 Vt. 435, 77 A. 2d 835 (1951). See generally 3 Moore, *Federal Practice* ¶ 15.08[2] (2d Ed. 1968) ; 71 C.J.S., *Pleading*, § 275(b) at 580-83 (1951) ; 41 Am. Jur., *Pleading*, § 292 at 490-91 (1942).

The Chancellor recognized this policy in his ruling of December 6, 1968, when he stated that the instant case presented "one of those *rare situations*" (emphasis sup-

plied) where the plaintiffs could not make out a case in equity and for that reason he sustained the demurrer without leave to amend. In our opinion, the present case was not a "rare situation" justifying a denial of leave to file an amended bill of complaint. On the contrary, the situation required the granting of such leave so that the Halls would have the opportunity to present, on the pleadings at least, a cause of action in equity and a denial of such leave was an abuse of the Chancellor's discretion.

In the first place, the *only grounds* presented to the Chancellor by the demurrer were limitations and laches. Maryland Rule 345 b (made applicable to demurrers in equity by Rule 373) is clear that the party filing a demurrer *must* set out *specifically* his *grounds* for the demurrer and the trial court will not consider any grounds not specifically alleged. *Kline v. Lightman,* 243 Md. 460, 478, 221 A. 2d 675, 685-86 (1966) ; *Baltimore County v. Glendale Corp.,* 219 Md. 465, 150 A. 2d 433 (1959).

This is a salutary rule which prevents the surprises and difficulties attendant upon the common law general demurrers. In our opinion, the Chancellor at the stage of the pleadings on demurrer should not have considered the additional, but not alleged, ground for demurrer that it was not shown that there was no adequate remedy at law.

Secondly, by the provisions of Rule 371 a and b, a defense which does not appear upon the face of the bill of complaint "shall be made by answer" and any defense which appears upon the face of the bill of complaint "shall be made either by demurrer or by answer." The defenses of limitations and of laches to be availed of on demurrer must appear upon the face of the bill of complaint, itself, and other matters not so appearing cannot be considered in making the determination of whether or not these defenses bar any cause of action by the Halls. These defenses may be raised by demurrer to a bill of complaint when they appear upon the face of the

bill of complaint that these defenses are a bar and generally the statute applicable to actions at law will be followed by analogy by the equity courts. *Stevens v. Bennett*, 234 Md. 348, 199 A. 2d 221 (1964) ; *Cargill v. Brady*, 231 Md. 455, 190 A. 2d 793 (1963).

Thirdly, when periods of time less than the analogous period of the statute of limitations are involved, the equity courts will not sustain the defense of laches unless it appears that the defendant has been prejudiced by the plaintiff's delay in the assertion of his rights. *Simpers v. Clark*, 239 Md. 395, 403, 211 A. 2d 753, 757 (1965). To sustain a demurrer on the ground of laches, both the unreasonable delay and the resulting prejudice to the defendant must appear on the face of the bill of complaint.

Fourthly, in a hearing on demurrer to the bill of complaint, the Chancellor will assume as true, for the purposes of the demurrer, all of the well-pleaded facts in the bill of complaint and attached exhibits, as well as the inferences which may be reasonably drawn from those well-pleaded facts. *Parish v. Maryland and Virginia. Milk Producers Assn. Inc.*, 250 Md. 24, 71, 242 A. 2d 512, 538 (1968).

In the instant case, both the Halls and The Barlow Corporation in the lower court and before us in their briefs and arguments have presented matters not alleged in the bill of complaint and indeed not in the record in the case. In our opinion, both the Chancellor and this Court are confined to the consideration of the well-pleaded facts in the bill of complaint, attached exhibits and the inferences reasonably drawn from those well-pleaded facts for a consideration of the ruling on demurrer and we shall proceed on that basis.

When viewed in the light of these well-established principles of equity procedure and practice, it is by no means clear to us that the demurrer to the bill of complaint was properly sustained on the two limited grounds alleged in the demurrer. Although, as we have indicated,

we will not make a final determination in regard to this issue, we necessarily must consider the issue, in part, as casting light on whether or not the Chancellor abused his discretion in not allowing the Halls to file an amended bill of complaint. For this limited purpose, it appears to us that it could well be argued that the defense of limitations does not necessarily appear on the face of the bill of complaint and attached exhibits and the reasonable inferences to be drawn from the allegations in the bill of complaint and attached exhibits. It is quite correct, as the appellee observes, that the note in question was *dated* January 22, 1965, and suit was not filed until April 2, 1968, which is later than the applicable three year statutory period, the note not being under seal. In paragraph 6 of the bill of complaint, however, it is alleged that this note "was not *delivered* to the plaintiffs until on or about May 23, 1965" (emphasis supplied) at which time the Halls executed a subrogation agreement, subordinating their deed of trust securing the note, to the $13,500,000.00 deed of trust of the Riggs National Bank. The reasonable inference from this allegation is that the note was not effective until the time of delivery and hence the cause of action against The Barlow Corporation for the omission did not accrue until that time, which was within the three year period. See Code (1957), Art. 57, § 1. Cf. *Mumford v. Staton, Whaley & Price,* 254 Md. 697, 255 A. 2d 359 (1969) and the prior Maryland cases cited therein.

Neither the contract of sale nor the addendum affirmatively state that the note should be delivered *at the time of settlement.* Indeed, the addendum rather suggests that the important date for many purposes was the *date of subordination.* Paragraph 4 in the addendum in regard to the note first states in subparagraph (a) that the note holders agree to subordinate to the construction and original permanent loan. Subparagraph (b) provides for the endorsement by The Barlow Corporation. Subparagraph (c) provides that the life insurance policy on Milton's life shall be delivered *at the time of subordina-*

*tion.* The remaining subparagraphs principally relate to construction which would take place after the construction loan was finalized, which would be at the time of subordination. There is no provision that the endorsement by The Barlow Corporation was required to be made at the time of settlement and in the setting of the other provisions in the addendum it could well be argued that the condition would be fulfilled if it were placed on the note at the time of subordination. It also may well be argued that in view of the allegation in Paragraph 5 of the bill of complaint that Milton is president and director of both Prospect Properties, Inc. and The Barlow Corporation, together with the "condition" that The Barlow Corporation guarantee payment by endorsement of the note and the other provisions of the contract of sale and the addendum indicating that Milton was the dominant figure so far as the purchaser was concerned, Milton had assumed the obligation to see to it that The Barlow Corporation would endorse the note at the time of the subordination at the latest and that he had the power to accomplish this. Equity regarding as done what ought to be done might well consider that The Barlow Corporation was authorized and directed by its agent, Milton, to make the endorsement and that this obligation continued at least until the time of subordination and possibly thereafter.

The Chancellor, therefore, should have considered that there was, at least, substantial doubt that his sustaining of the demurrer was proper and should have considered this factor in determining whether or not to allow the Halls to amend.

In view of the authorities in regard to laches already mentioned, which require a showing of prejudice to the defendant from unreasonale delay in the assertion by the plaintiffs of their rights, it seems clear that the bill of complaint *on its face* fails completely to show any prejudice to The Barlow Corporation by the passage of time. Laches *ultimately may be a defense,* raised by answer,

but this defense does not, in our opinion, appear on the face of the bill of complaint.

The Barlow Corporation contends that the Halls should not be heard to cast doubt upon the Chancellor's order sustaining the demurrer because of their statement in their Motion for Reconsideration that the plaintiffs "have alleged in the Bill of Complaint facts which while *permitting* the Court to make the findings as to laches and limitations that it has, do not set forth all of the facts * * *" (emphasis supplied) which, it contends, is a recognition of the correctness of the Chancellor's decision in this regard. We do not so interpret the statement and apparently neither did the Chancellor inasmuch as he did not refer to it in his ruling on the motions. In our opinion, the statement is merely a polite way of approaching the Chancellor for leave to amend and indicated that but for the failure of the Halls in alleging additional facts in their possession, the Chancellor could not have reached the decision he did. There was no statement that the Chancellor's decision was *correct* and we do not believe that this parenthetical statement was intended to indicate this.

When we consider the allegations of the Motion for Reconsideration with the attached letter of May 21, 1965, from Prospect Properties, Inc., by Milton, its President, to the then counsel for the Halls, it is clear to us that the Halls could well argue, and with proof of other circumstances possibly prevail, in their position that the letter of May 21 was an acknowledgment of an obligation by The Barlow Corporation, through its agent Milton, to endorse the note. In the letter of May 21 it is stated that in regard to Paragraph 4(b) of the addendum "It is *my* understanding that the Halls will produce *at settlement* their note to which *will be affixed an endorsement* by Barlow Properties, Inc. guaranteeing payment." Barlow Properties, Inc. is the same corporation as The Barlow Corporation, the corporate name having been changed to The Barlow Corporation, as is shown by the first allegation in the bill of complaint.

Although this letter is signed "Prospect Properties, Inc. By Milton A. Barlow, President," it seems clear that the statement in regard to Paragraph 4(b) is by Milton *personally*, inasmuch as the language is *"my* understanding," not that it is the understanding of Prospect Properties, Inc., the corporation of which Milton is alleged to be President and Director.

It seems clear also that "the time of settlement" for the affixing of the endorsement by The Barlow Corporation to the note was the time of the subordination and this substantially, at least, supports the allegations of the Halls that the note was "delivered" at the time of the settlement. In any event, Milton understood that the endorsement "will be affixed" at the time of subordination, from which it may reasonably be assumed that it had not been affixed prior to that date. It also indicates that whatever obligation The Barlow Corporation had to endorse the note, did not arise until that date.

The Barlow Corporation contends that it was not a party to the contract of sale and addendum, that the endorsement by it was a *condition* and not a *promise* by it, and hence there is no constructive obligation upon it to endorse the note. Under the circumstances alleged, however, this position is too simplistic.

The allegations of the bill of complaint and attached exhibits together with the letter of May 21, 1965, and reasonable inferences from these allegations and documents, indicate that Milton was the dominant figure in, and agent for, both Prospect Properties, Inc. and The Barlow Corporation and, as such, he had the power and the obligation to effectuate the "condition" that The Barlow Corporation endorse the note, and that he had properly exercised this power to effectuate the "condition."

If there is doubt in regard to the sufficiency of the proposed amendment, the Chancellor should permit it to be filed. *Southport Mill, Ltd. v. Friedrichs,* 167 La. 101, 118 So. 818 (1928); *Partridge v. Fidelity and Cas. Co.,* 213 App. Div. 8, 209 N.Y.S. 502 (1925); See generally 71 C.J.S., *Pleading,* § 281 at 595 (1951).

It should be observed also that the application for leave to amend was timely made in the motion for reconsideration which was filed on November 15, 1968, just seven days after the Chancellor's order of November 8. The application for leave to amend was the plaintiffs' *first* application for leave to amend so that the situation in the present case is not one in which a plaintiff has tried one or more times to amend to state a cause of action but has been unsuccessful in accomplishing this. See *Perlmutter v. Minskoff,* 196 Md. 99, 112, 75 A. 2d 129, 135 (1950).

Then too, the application for leave to amend was filed before an answer had been filed by the defendant or any hearing on the merits had been had. There are no elements of surprise or prejudice to the defendant which might otherwise have resulted if leave to amend were requested after the suit was at issue on the pleadings or the case had been tried on the merits. See, e.g., *Jackson City Bank & Trust Co. v. Blair,* 333 Mich. 399, 53 N.W. 2d 493, 32 A.L.R. 920 (1952) ; *Appliance Buyers Credit Corp. v. Upton,* 65 Wash. 2d 793, 399 P. 2d 587 (1965). See generally 71 C.J.S., *Pleading,* § 281 at 596-97, § 282 at 597-605 (1951) ; 41 Am. Jur., *Pleading,* § 296 at 494-95 (1942).

In the present case there is a substantial amount of money involved and unless the amendment to the bill of complaint is granted, the bar of the statute of limitations will have run on any other proceeding, even upon the theory of the plaintiffs in the case, so that substantial prejudice would result to the Halls from the denial of leave to amend.

It may be, of course, that the facts when finally established may negate many of the "facts" alleged in the bill of complaint and the reasonable inferences from those facts, but as we have indicated, for the consideration of the demurrer, the alleged facts and these reasonable inferences are the controlling ones. In any event, in our opinion, the Halls were entitled to have the opportunity

to amend their bill of complaint as prayed and, under all of the circumstances, it was an abuse of discretion by the Chancellor to deny them leave to file an amended bill of complaint.

We might add that the "ruling" by the Chancellor on December 6, 1968, although appearing on the docket and in the transcript of the testimony was not made the subject of a written order as required by the proper Maryland Chancery practice. We shall once more treat the docket entry as an "order," but we again express our hope that the bar, and the trial judges of the State, will comply with the established chancery practice in this regard.

> *Order of November 8, 1968, and ruling of December 6, 1968, denying the appellants leave to file an amended bill of complaint, reversed, and case remanded for the entry of an order granting such leave, with further proceedings in due course thereafter, costs to be paid by the appellee, The Barlow Corporation.*