## HALL ET AL. *v.* BARLOW

[No. 179, September Term, 1970.]

*Decided January 7, 1971.*

328

*Motion for rehearing filed February 4, 1971; denied February 9, 1971.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

*Ferdinand J. Mack,* with whom were *Shadoan & Mack* on the brief, for appellants.

*Paul Martin, Wolff,* with whom were *Paul R. Connolly, Thomas E. Patton* and *Williams & Connolly* on the brief, for appellee.

FINAN, J., delivered the opinion of the Court.

The appellants brought this action in contract premised on the appellee's breach of implied warranty in failing to obtain the endorsement of The Barlow Corporation on a purchase money promissory note on which $316,800.00 was due and owing.[1] Moorman, J., sitting without a jury found the claim barred by limitations; however, anticipating the possibility of appeal and seeking to relieve the parties from circuitous litigation, the court proceeded to decide the case on its merits, finding in favor of the appellee-defendant. For the reasons which follow, we think the judgment of the lower court should be reversed.

This action was instituted by the plaintiffs (appellants), W. Luther Hall and Elizabeth M. Hall, his wife, against Milton Barlow and Prospect Properties, Inc. defendants below, in a five count declaration filed August 2, 1967, and amended to two counts on April 8, 1968. The first count in the amended declaration is against Milton Barlow for breach of his implied warranty that he had authority to secure the endorsement of The Barlow Corporation to the note. The second count is against Prospect Properties, Inc., for money due on the note. (Judgment

---

1. The Barlow Corporation was originally Barlow Properties, Inc.; the charter of the corporation was amended to effect the change in the corporate name in February, 1966.

was rendered against defendant, Prospect Properties, Inc., from which it did not appeal.) The action arose out of a transaction whereby the Halls negotiated the sale of property on Prospect Street and High Street in Friendship Heights Subdivision, Chevy Chase, Maryland, to Milton Barlow for the sum of $600,000.00 for which the note was given as part of the purchase money.

Milton Barlow was president of Prospect Properties, Inc. and of The Barlow Corporation. He was also one of the three directors of each corporation. His wife was vice-president of both and a director of both. All of the stock of Prospect Properties, Inc. was owned by The Barlow Corporation. All of the voting stock of The Barlow Corporation was owned by Milton Barlow. The nonvoting stock was owned by a trust established by Milton Barlow for his children. Additionally, Mrs. Hall testified that, at one point in the negotiations between the parties, Milton Barlow stated "I am the Barlow Corporation."

The contract of sale was executed August 3, 1964. It was agreed that the contract could be assigned by Milton Barlow without his incurring any personal liability and it was subsequently assigned. The parties also executed an "Addendum to Annexed Contract," which addendum was to be considered a part of the total agreement for the sale of the property. The addendum begins with the provision that "The contract shall be subject to the following conditions:" and then five provisions are recited. These included provisions relating, among other things, to zoning and a deed of trust. Provision number four states: "The purchase money note secured by a second deed of trust shall contain the following conditions: (b) The Barlow Corporation shall guarantee by endorsement the purchase money note." Condition number six states: "This contract may be assigned without personal liability to Milton Barlow." Numbered paragraph 17 of the contract also provides "That the provisions hereof shall survive the execution and delivery of the deed aforesaid and shall not be merged therein * * *." Milton Barlow signed both the

contract and the addendum and assigned the contract to Prospect Properties, Inc.

On or about January 18, 1965, settlement occurred and title was passed to Prospect Properties, Inc. At this closing, which was held in the offices of the District Realty Title Insurance Company, Washington, D. C., there were present Milton Barlow and his attorney, Mr. Carmody; the Halls; Mrs. Edwards, a real estate agent; and Mr. Glasgow, the Halls' attorney. The appellee believes it significant that at this meeting neither the Halls nor their attorney mentioned in any way paragraph 4(b) of the addendum, whereby The Barlow Corporation was to guarantee the purchase money note. On January 22, 1965, Prospect Properties, Inc. executed and delivered to District Realty Title Insurance Company the purchase money note and a deed of trust in favor of the Halls. Milton Barlow and his wife signed the instruments in their capacities as officers of Prospect Properties, Inc.

The face amount of the note was $352,000 and was subordinate to a first deed of trust held by the Riggs National Bank in the amount of $13,500,000. The Halls did not receive a copy of the purchase money note until on or about May 28, 1965. Upon receipt of the note Mrs. Hall (who claimed ignorance of what a note should look like) placed it in her safe deposit box, her husband being unaware of its receipt. On May 27, 1965, the Halls executed the subordination agreement whereby their own deed of trust and the note was subordinated to the deed of trust of the Riggs National Bank. It was not, however, until January of 1967 that the Halls first realized that the endorsement of The Barlow Corporation had never been affixed to their note from Prospect Properties, Inc. Although the record would support the fact that the Halls were unaware that the guarantee of The Barlow Corporation had not been placed on their note, it would appear from the record that Mr. Barlow was quite aware of the absence of the guarantee.

Sometime after settlement on January 18, 1965, Mr. Barlow had a conversation with Mr. Glasgow, the Halls'

attorney, as to what would be required before the Halls would sign the subordination agreement. Mr. Glasgow informed Mr. Barlow that the Halls wanted the note endorsed by The Barlow Corporation and shortly before May 27 or 28, 1965, Mr. Barlow orally agreed to provide the guarantee called for by paragraph 4(b) of the addendum to the contract. Mr. Barlow stated unequivocally that the note would be guaranteed by The Barlow Corporation at the meeting to execute the subordination agreement. In fact, Mr. Barlow told Mr. Glasgow to rough out a letter for his signature, setting forth the matters in the contract that required completion. Mr. Barlow agreed that he would rewrite such a letter on his stationery and sign it, which he did. This letter dated May 21, 1965, is quite important to this case and in pertinent part reads as follows:

"Dear Mr. Glasgow:
    Paragraph 4(b). It is my understanding that the Halls will produce at settlement their note to which there will be affixed an endorsement by Barlow Properties, Inc., [Barlow Corporation] guaranteeing payment.

                    Respectfully submitted,
                    PROSPECT PROPERTIES, INC.
                    by /s/ Milton A. Barlow
                        Milton A. Barlow
                        President"

The meeting was held on May 27 or 28, 1965, (the record not being precise as to the exact date), as a result of which the Riggs National Bank advanced a $13,500,000 construction loan to Prospect Properties, Inc. The endorsement of The Barlow Corporation was not affixed to the Halls' note at this meeting, nor did the subject come up. It would appear that the next conversation that Mr. Barlow had with anyone concerning this note was in late 1966 or early 1967, when Mr. Glasgow called on the telephone to inform him that the note had not as yet been guaranteed by The Barlow Corporation and asked Mr.

Barlow to remedy the situation. Mr. Barlow refused. At this time the Halls had, many months before, fulfilled all that they had promised to do under the contract or addendum. On May 22, 1968, Mr. Barlow received a letter demanding the guarantee of The Barlow Corporation on the Prospect Properties, Inc. note to the Halls. Mr. Barlow has consistently refused to secure The Barlow Corporation's guarantee on the note. The Halls in obvious frustration filed an action in contract against Milton Barlow and Prospect Properties, Inc. on August 2, 1967, and amended their declaration on April 10, 1968. It was stipulated by all parties at the hearing below that Prospect Properties, Inc. was, as of the time of the hearing, insolvent. The Halls also made an admission of fact that they had received one payment of $35,200 on the principal of the purchase money note.

For a full understanding of this case it should be noted that certain peripheral actions have been filed in the Circuit Court for Montgomery County, Maryland. Equity No. 32731 was filed by the Riggs National Bank against Prospect Properties, Inc. to foreclose its deed of trust covering the property involved in this case.[2] Equity No. 34816 is an action now pending and brought by the Halls against The Barlow Corporation for reformation of the note, which is the subject of controversy in this suit, whereby they seek to have The Barlow Corporation endorse the note of Prospect Properties, Inc. In this latter suit the chancellor below sustained a demurrer to the action based on the statute of limitations; however, on appeal we reversed and remanded for further proceedings. *Hall v. Barlow Corporation*, 255 Md. 28, 255 A. 2d 873 (1969). Also pending is Equity No. 33748 whereby the Halls are endeavoring to enforce their second trust against the Riggs National Bank. Upon argument of the case at bar, this Court was also informed by counsel for the appellants that an action was pending by the Halls

---

2. The Halls filed objections to the foreclosure and as a creditor received the sum of $50,240.

against their attorney Glasgow, the nature of which was not disclosed.

In the instant case, the court below entered judgment for the Halls against the insolvent Prospect Properties, Inc., and judgment in favor of defendant Milton Barlow, from which judgment the Halls have appealed.

The lower court predicated its finding for Milton Barlow on two premises: first, the running of limitations and second, that the Halls failed to prove any breach of warranty, expressed or implied on the part of Milton Barlow of his authority to endorse the note for The Barlow Corporation. We shall proceed to discuss both of these propositions, which, in the context of this case, present us with more of an analysis of facts than questions of law.

### Statute of Limitations

In an able opinion (with which we disagree, however), Judge Moorman conceded that the Halls' original declaration filed August 2, 1967, based on breach of an express contract, was filed within the three year statutory period of limitations. Maryland Code (1968 Rep. Vol.) Art. 57, § 1. However, he noted that the amended declaration in which the Halls changed the theory of their case to a breach of implied warranty of authority was filed on April 10, 1968, after the three year period of limitations had expired. The lower court in its memorandum opinion points out that the amended declaration requires "completely different facts in order to prove a case, the elements are dissimilar and the measure of damages is different. * * * To sustain this action the plaintiff must allege and prove facts relevant, not to the terms of the contract, but to the relationship between the defendant (agent) and the principal (here The Barlow Corporation). They are different causes of action. * * *" In support of its position the court cited *Cline v. Fountain Rock Lime and Brick Co.*, 214 Md. 251, 258, 134 A. 2d 304 (1957), a case involving the statute of limitations. In that case the plaintiff in his original declaration, which was timely filed, relied upon an oral lease agreement, and

the amended declaration which was filed after the expiration of the statutory period, relied upon an alleged oral joint venture. This Court held the amended declaration was based on a new cause of action and thus barred by limitations. The case of *Doughty v. Prettyman*, 219 Md. 83, 148 A. 2d 438 (1959) also cited by the lower court, further explores the question as to how far a plaintiff may go in amending his declaration without stating a new and different cause of action.

After reading the cases and those which are cited in them we are not prepared to say that the lower court was right in its conclusion that the amended declaration in the case at bar is based on a new cause of action. However, we need not decide that issue for the reason that we are of the opinion that there was a reaffirmation of the obligations set forth in the amended declaration which revived the remedy. As corollary to this, we believe the trial judge erred in holding August 3, 1964, the date upon which the contract between the parties was executed, as the date from which limitations should be computed.

We address ourselves to the letter of May 21, 1965, which Milton Barlow signed as president of Prospect Properties, Inc. addressed to Glasgow, the Halls' attorney, and assess its significance. That letter, composed by Glasgow and transcribed by Milton Barlow on his own stationery, was written in contemplation of the forthcoming meeting at which the subordination agreement was to be executed. It reads in part:

"Paragraph 4(b) — It is *my* understanding that the Halls will produce at settlement their note to which there will be affixed an endorsement by Barlow Properties, Inc., guaranteeing payment." (Emphasis supplied.)

This Court in *Hall v. The Barlow Corporation, supra,* interpreted the use of the personal pronoun "my" (which we will discuss later in this opinion) to mean that the statement in the letter was "by Milton personally." We further construe the letter, in light of the circumstances

surrounding its writing, as the personal reaffirmation of Milton Barlow warranting the endorsement of the purchase money note by The Barlow Corporation, regardless of how he may have signed it.

The lower court dismissed the relevance of this letter of May 21, 1965, with regard to its constituting a reaffirmation by Milton Barlow of his warranty that The Barlow Corporation would endorse the note, on the basis of lack of proof that he intended by the letter to reaffirm his authority, stating:

> "The burden is thus upon plaintiffs to establish 'with proof of other circumstances' that it was the intent of the defendant at the time the letter was written to reaffirm the warranty of his authority (if such was made). There is completely absent in the record sufficient evidence to establish this fact. There was no liability of Milton Barlow on the contract at the time the letter was written for he had already assigned it to Prospect Properties. Plaintiffs further urge upon us the theory that the letter of May 21, 1965, is a reaffirmation or acknowledgment of the warranty and that the statute of limitations should be held to run from the date of the alleged reaffirmation or acknowledgment. It is the law in Maryland that the statute of limitations may be tolled or its bar removed with respect to an ordinary debt or obligation by new promises to pay the debt or obligation or an acknowledgment thereof. 14 M.L.E. pg. 382 and cases cited. However, the subsequent acknowledgment must refer satisfactorily or clearly to the obligation. *Doughty v. Bayne,* 222 Md. 361."

The lower court, as well as the appellee, relied on the case of *Doughty v. Bayne,* 222 Md. 361, 160 A. 2d 609 (1960), as setting forth the test to be applied when an acknowledgment of a pre-existing obligation revives the

remedy, the appellee quoting the following language from
that case:

> "* * * In Maryland, unlike most other states,
> an acknowledgment of a subsisting debt [in this
> case the obligation to perform], unaccompanied
> by any qualification or declaration which, if
> true, would exempt a defendant from a moral
> obligation to pay, or such an acknowledgment
> accompanied by a refusal to pay, coupled with
> an excuse for not paying which itself furnishes
> no real objection to the payment of the debt
> [in the case at bar the obtaining of the endorse-
> ment] is sufficient to remove the bar of the stat-
> ute * * * [W]e must also be mindful that the
> acknowledgment must be a clear, distinct and
> unqualified admission. *Crawford v. Richards,* 197
> Md. 289, 293, 79 A. 2d 143, and cases cited there-
> in. The evidence of the acknowledgment must
> also be considered in its entirety, and the credi-
> tor cannot accept the admission and reject any
> qualification that might make the acknowledg-
> ment ineffective. *Hidgon v. Stewart,* 17 Md. 105,
> 111-113; *Oliver v. Gray, supra,* at 219 [1 H &
> G 204]." 222 Md. at 365.

However, one should not consider the language of
*Doughty v. Bayne,* exclusive of its facts, for it is only in
the application of the language to the facts that we are
able to realize the full import of the opinion. In *Doughty
v. Bayne,* the plaintiff had loaned the defendant $2500 to
assist the latter in his jewelry business and had taken a
note as evidence of the debt. Nothing was ever paid on
principal or interest. Approximately five years later the
plaintiff (appellee) called the defendant on the telephone
and stated that he needed the money and wanted it back.
At first the defendant said that he did not remember the
note. The plaintiff further related:

> "* * * Then after I refreshed his memory he
> said, 'Well, possibly I did sign it. But don't you

think I have lost enough?' I said 'Yes, I realize you have lost quite a bit.' 'But', I said, 'this $2,000.00 that I personally loaned you is a lot of money to me.' He said, 'Well, I can't pay you.' I proceeded to go ahead. I said, 'I want my money.' I said, 'You gave me a note for it. You said you would be liable for it.' 'And', I said, 'I want my money. I need my money.' He said, 'Well, I haven't got it. I can't pay it. If you want to take it to an attorney and see what he can do about it, all right.' " 222 Md. 364.

It was upon such an affirmation of a pre-existing obligation that this Court in *Doughty,* affirmed the lower court's judgment in favor of the creditor who was the plaintiff-appellee. Chief Judge Brune writing for the Court pointed out that the debtor did not deny the debt but "merely said he did not remember the note and admitted he possibly could have signed it * * *." The Court also pointed out that the only reason the debtor gave for his not paying the note was that he could not afford it. The Court finally concluded, "as stated above, this could be interpreted to mean that the appellant acknowledged the note was his, and the only reason he could not pay was for lack of money, which excuse, of course, is not sufficient." 222 Md. 361, at 366, 367.

In fact our reading of *Doughty v. Bayne* persuades us that the trial judge in the case at bar erred in the interpretation which he placed on the facts and circumstances surrounding the letter of May 21, 1965. The lower court in its memorandum opinion makes much of the fact that at the time that Milton Barlow, as president of Prospect Properties, Inc., wrote the letter of May 21, 1965, to Glasgow there was no personal liability on his part because he as an individual had already assigned the contract to Prospect Properties, Inc. However, although the contract expressly provided that Milton Barlow could assign it, as purchaser, without personal liability, we take this only to mean that he was not guaranteeing the performance or financial stability of the assignee which was Prospect

Properties, Inc. This is totally independent of other commitments he might and did make under the contract.

The addendum provided by way of paragraph 4(b) that "The Barlow Corporation shall guarantee payment by endorsement of the purchase money note." Milton Barlow signed the contract as an individual, and if paragraph 4(b) of the addendum was to mean anything, it had to mean that when Milton Barlow, as an individual, signed the addendum he was representing himself as having the means at hand to secure The Barlow Corporation's endorsement on the purchase money note; that is, he in effect warranted that he had the authority to bind The Barlow Corporation to such a commitment.

We are of course, at this point in this opinion, assuming that the provision 4(b) of the addendum is properly construed as a promise and not a condition (which would be waived by the execution and delivery of the deeds without it having been met), a distinction which we shall discuss at some length later in this opinion. Working from this premise (which we believe to be valid) our reasoning compels us to conclude that Milton Barlow by his actions gave an implied warranty that The Barlow Corporation would endorse the purchase money promissory note when the contract and addendum were executed on August 3, 1964, and that this warranty was re-affirmed by the letter of May 21, 1965. We think the affirmation contained in the letter refers clearly and distinctly to the specific obligation to be performed and contemplated by the parties. Certainly the acknowledgment of the previous obligation, which revives the remedy in the instant case, is much stronger than that found in *Doughty v. Bayne, supra.* This being so we are of the opinion that the claim set forth in the Halls' amended declaration is not barred by limitations.

### Breach of Warranty

The contract executed August 3, 1964, between the Halls and Milton Barlow contained an addendum entitled "Addendum to Annexed Contract" which commenced

with the following clause: "This contract shall be subject to the following conditions: * * *." Thereafter, one of the following listed paragraphs is paragraph 4(b), which we have previously discussed and which provides "The Barlow Corporation shall guarantee payment by endorsement of the purchase money note." Counsel for Milton Barlow seized upon the designation of paragraph 4(b) as a "condition," pointing out that in the field of contract law, the term "condition" is a word of art with a fixed legal connotation. *Restatement of Contracts*, § 250, Comment a (1932). Appellee emphasizes that although a condition is a provision which the parties agree must be fulfilled if the contract is to bind them, yet, if unfulfilled either party may refuse to perform the contract, or may choose to consummate the contract and thereby waive the condition. Appellee further seeks to buttress this contention that paragraph 4(b) is a condition which was waived when the Halls transferred the title to their property on January 22, 1965, and accepted the purchase money note absent the guarantee, by distinguishing a condition from a promise. We obtain a better perspective of the argument of both parties on this issue by reference to Professor Corbin's distinction between these terms:

> "A promise in a contract creates a legal duty in the promisor and a right in the promisee; the fact or event constituting a condition creates no right or duty and is merely a limiting or modifying factor." *Corbin, Contracts*, Vol. 3A, Sec. 633 (1960).

In *Hall v. The Barlow Corporation,* 255 Md. 28, 46, 255 A. 2d 873 (1969), a case wherein the chancellor had sustained The Barlow Corporation's demurrer to the Halls' bill of complaint on the basis of limitations (and which we reversed and remanded), the same argument was raised by The Barlow Corporation as is now raised by Milton Barlow, i.e., that paragraph 4(b) should be construed as a condition and not a promise. This Court in its opinion in that case rejected the position of The

Barlow Corporation as being "too simplistic." It is true
that in *Hall v. The Barlow Corporation, supra,* the record
contained only the pleadings and documents on which
suit was based, as the posture of the case at that time was
an appeal from the sustaining of a demurrer; however,
presently, with the benefit of a record containing a hear-
ing on the merits, we think it would be even more sim-
plistic to endeavor to classify paragraph 4(b) of the ad-
dendum as a condition, rather than a promise.

The trial judge in support of his construction of para-
graph 4(b) as a condition, stated:

> "It appears that at settlement, this clause re-
> ferring to the Barlow Corporation's endorsement
> was merely to be another condition to the seller's
> agreement to proceed. If either the zoning had
> not been procured or if the Halls had not agreed
> to accept a second trust note for the sale, there
> would not have been a breach, only a right on
> the part of one party or the other not to pro-
> ceed. The same is true in respect to the settle-
> ment in paragraph 4(b). The Halls could have
> refused to go through with settlement absent
> the endorsement, but having failed to so do, the
> condition was waived and a new contract re-
> sulted. (See Restatement of the Law of Con-
> tracts, Section 296.")

However, in arriving at his interpretation that para-
graph 4(b) was a condition waived by the Halls when
they executed their deeds and accepted the purchase
money note, absent the endorsement, we think the trial
judge failed to place the proper significance on the lan-
guage in the contract, which states:

> "(17) The principals to this contract mutually
> agree that it shall be binding upon them * * *;
> that the provisions hereof shall survive the ex-
> ecution and delivery of the deed aforesaid and
> shall not be merged therein. * * *.
> Subject to exhibits attached hereto and made

a part hereof. [The addendum to Annexed Contract was attached to the contract]."

A construction of the contract to the effect that the clause "This contract shall be subject to the following conditions: * * *" necessarily renders all of the provisions set forth in the addendum only conditions which were waived if not performed prior to the delivery of the Halls' deed, despite the context in which they appear, does not survive analysis. If the lower court's construction were correct it would render most of the provisions in the addendum surplusage or meaningless, which was hardly the intent of the parties. A glaring example is provided by the proviso in paragraph 4(a) of the addendum which provides that the Halls ("Note Holders") agree to subordinate their deed of trust to not only the construction loan but to the permanent loan. Certainly this subordination of the Halls' deed of trust had, out of chronological necessity, to occur in point of time after the settlement date of January 22, 1965. If this provision in the addendum were to be construed as merely a condition which did not survive the settlement date, rather than a promise to be performed, Milton Barlow may have had a vital blow dealt to his financial arrangements shortly after the payment of the purchase price of the property had the Halls refused to subordinate their trust after the date of settlement. Also, paragraph 4(g) called for Prospect Properties, Inc., prior to commencement of construction, to give evidence of financial stability if the loan commitment did not exceed the construction contract cost. Obviously, this provision would have little or no meaning at the time of the settlement date on January 22, 1965, as a general contractor had not at that time been selected. Again, paragraphs 4(c) and (h) both required performance of acts of a continuing nature, such as the maintaining of life insurance on the "Note Maker" until the building was substantially completed and "Note Maker's" representation that Milton Barlow would continue as chief executive officer of Prospect Properties, Inc. until substantial completion of the building. It is in-

consistent and unreasonable to construe the contract as requiring performance of such provisions prior to delivery of the deed, merely because the descriptive term "conditions" had been applied to them. If such a construction prevailed it could only mean that a substantial portion of the agreement was subject to being frustrated because of the deliberate use of inconsistent provisions in the contract. We do not believe reasonable men would so intend. In *James v. Goldberg*, 256 Md. 520, 527, 261 A. 2d 753 (1970), we recently had occasion to say, "* * * We must determine the intentions of the parties from the language of the contract itself, not by what a party to the contract intended it to mean, or thought it meant, but 'what a reasonable person in the position of the parties would have thought it meant.' *Chesapeake Isle, Inc. v. Rolling Hills Development Company, Inc.*, 248 Md. 449, 453, 237 A. 2d 1, 3 (1968)."

We think each of the provisions in the addendum must be viewed with reference to the contract as a whole, and where the contract states that "the provisions" of the contract "shall survive the execution and delivery of the deed," the mere designation of a promise as a condition does not necessarily make it one. There are no doubt some provisions in the addendum which were conditions, such as the necessary rezoning; however, again, we think each provision must be interpreted while viewing the contract and addendum as a whole.

Having determined that paragraph 4(b) of the addendum was not a condition but a contractual promise (which survived both the settlement date as well as the date of execution of the subordination agreement), whereby Milton Barlow impliedly warranted that The Barlow Corporation would endorse the purchase money note, we come to the final question as to whether Milton Barlow breached this warranty. We think that he did. We would again look at the several hats worn by Milton Barlow and the various guises in which he appears in this transaction. First, he is Milton Barlow the individual; next he is Milton Barlow, president, director and sole owner of the voting stock in

The Barlow Corporation; and again, he is Milton Barlow, president and director of Prospect Properties, Inc., a wholly owned subsidiary of The Barlow Corporation; and finally, he is Milton Barlow, agent for both of the aforementioned corporations.

Milton Barlow's defense is so disarming in its naiveness as to appear contrived. He states that he is not guilty of a breach of his warranty that The Barlow Corporation would endorse and guarantee the purchase money note because such a commitment was within the scope of his powers as president of The Barlow Corporation, but, notwithstanding, the corporation refused to endorse the note. The trial judge held that the by-laws of the corporation were sufficiently broad as to vest him as president with this power and that the Halls failed to prove that he had breached the warranty.

The problem with such a contention is that Milton Barlow signed the contract and addendum as an individual and not as president of The Barlow Corporation. Additionally, it should be recalled that in the letter of May 21, 1965, wherein he affirmed the warranty of endorsement by The Barlow Corporation, that although he signed the letter as president of Prospect Properties, Inc., he employed the use of the personal pronoun "my" in stating "it is my understanding that the Halls will produce at the settlement their note to which will be affixed the endorsement by Barlow Properties, Inc. [The Barlow Corporation] * * *." This personal designation did not escape the attention of Judge Barnes in his opinion in *Hall v. Barlow Corporation*, 255 Md. 28, 46, 255 A. 2d 873 (1969), wherein writing for this Court he observed, "* * * it seems clear that the statement in regard to paragraph 4(b) is by Milton personally * * *." Therefore, the only authority that he had when executing the addendum and the letter was that which The Barlow Corporation might have given him to act as its agent. There is no doubt but that in the mind of the Halls he had apparent authority to so act. 3 Am.Jur.2d, *Agency*, § 101.

We now come to the consideration of the schizocarpous

quality of Milton Barlow's action. We do not view it as an impermissible penetration of the corporate veil to recognize that Milton Barlow, as an individual, knew the vagaries of the mind of Milton Barlow, president of The Barlow Corporation. In *Gribble v. Stearman & Kaplan, Inc.*, 249 Md. 289, 296, 239 A. 2d 573 (1968), we were presented with the case wherein the Garvins, who were husband and wife, executed a contract to sell certain land and accepted from the vendee a $7500 down payment. Subsequently the Garvins transferred the property to Gregg Properties, Inc., a corporation in which they owned all of the stock and of which they were president and secretary respectively. Shortly thereafter the corporation executed a deed of trust covering the property and subsequently the deed of trust was foreclosed. In holding that the vendee under the contract of sale had a legitimate claim to surplus proceeds from the foreclosure sale which could not be defeated by the claim of the corporation, we said that the knowledge of the husband of the existence of a prior contract of sale was knowledge of the corporation, stating: "Certainly, in this case Gregg Properties, Inc. was nothing more than a corporate alter ego of the Garvins and the knowledge of H. Glenn Garvin [the husband] was that of the corporation." See also 1 *Fletcher, Cyclopedia of the Law of Corporations* (1963 ed.), § 41.1.

It is hornbook law that a corporation can act only through its officers and agents and in this instance the president, the principal stockholder and agent were all the same person. We can only conclude that when The Barlow Corporation refused to honor the commitment made by Milton Barlow it could only be for one of two reasons: (1) that The Barlow Corporation never gave Milton Barlow, the individual, authority to act for it or that he was given some authority, but exceeded its scope; or (2) that Milton Barlow had the authority to commit the corporation but that The Barlow Corporation subsequently changed its mind regarding the corporate endorsement of the note. Clearly, the first alternative spells

out a breach of warranty on the part of Milton Barlow the agent. 12 *Williston on Contracts,* 3rd ed., § 1507; *Restatement (Second) of Agency,* § 329 (1957); 3 Am.Jur.-2d, *Agency,* § 322. With regard to the second alternative, namely, that The Barlow Corporation changed its mind regarding the endorsing and guaranteeing of the note, normally such a breach of contract by the principal would render the principal the party ultimately liable in an action by the other party to the contract, and the agent, assuming that he acted in good faith and actually had authority to bind the principal, would not be liable. 3 Am.Jur.2d, *Agency,* § 44 and § 179. However, where the relationship between the principal and agent is such that the agent states that he is the principal, as Milton Barlow did regarding The Barlow Corporation, we do not believe that under such a set of facts that the agent may absolve himself of liability by relying upon the trifurcation of his capacity to act in the role of the agent for The Barlow Corporation, the president of The Barlow Corporation or The Barlow Corporation, to suit his convenience, for in this instance he has represented himself and the corporation to be one.

It is not our intention in this opinion to erode in any way the general statement of the law that a corporation is recognized in law as an entity separate and apart from the person or persons who own its stock. Indeed, there are many cases wherein the courts have gone to considerable length to distinguish the acts of an individual in his personal capacity from his actions as a corporate officer of a corporation where he may be the sole or substantial stockholder. See *Damazo v. Wahby,* 259 Md. 627, 270 A. 2d 814 (1970); *Leister v. Carroll County National Bank of Westminster,* 199 Md. 241, 244-245, 86 A. 2d 393 (1952), and the annotation of that case in 31 A.L.R.-2d 657.

However, in the case at bar the distinction between the actions of Milton Barlow, as agent, and those of The Barlow Corporation, of which he was president and owner of all voting stock becomes a subjective matter, depend-

ing as they do upon the state of mind of Milton Barlow at any given point of time. Accordingly, in view of his statement that "I am The Barlow Corporation," the distinction that must be made in order to find Milton Barlow, the agent, not liable for breaching his warranty that The Barlow Corporation would endorse the purchase money note, is illusory. To hold otherwise would give Milton Barlow the best of two worlds, that is, by its refusal to endorse the purchase money note The Barlow Corporation, of which he is president and principal stockholder, is saved harmless and at the same time he as an individual would be absolved because he acted within the scope of his authority to commit the corporation to a promise it did not keep. For the reasons we have stated, we do not believe such a whipsaw argument should prevail.

It is our opinion that the judgment of the trial court in favor of Milton Barlow should be reversed and the case remanded for entry of a judgment in favor of the appellants against the appellee in the amount of $322,522.56 the sum stipulated by the parties to be due on the promissory note of Prospect Properties, Inc. with interest at the rate of six per cent per annum from January 23, 1969.

*Judgment reversed and case remanded for entry of judgment in favor of the appellants in conformity with the above opinion, appellee to pay costs.*