533 A.2d 287

**PICKETT, HOULON & BERMAN, et al.**
v.
**Elizabeth Catherine HAISLIP.**

**No. 307, Sept. Term, 1987.**

Court of Special Appeals of Maryland.

Nov. 12, 1987.

Certiorari Denied Feb. 24, 1988.

---

92

Alvin I. Frederick (Jeffrey J. Hines and Eccleston and Seidler, on the brief), Baltimore, for appellants.

Christopher G. Hoge (Daniel Crowley and Crowley, Hoge & Fein, on the brief), Washington, D.C., for appellee.

Argued before GILBERT, C.J., and ALPERT and ROSALYN B. BELL, JJ.

ROSALYN B. BELL, Judge.

In a legal malpractice action, a jury of the Circuit Court for Prince George's County rendered Elizabeth Haislip a verdict in the amount of $75,582.50 against Pickett, Houlon & Berman and Sanford Z. Berman.

This case began in 1981 with the retention by Mrs. Haislip of Mr. Berman of the law firm Pickett, Houlon & Berman. Prior to this time, Mrs. Haislip had separated from her husband and had filed a suit for divorce through another attorney on the grounds of adultery.

In October of 1981, a hearing was held and as a result of that hearing Mrs. Haislip was awarded a divorce. The issues of alimony and property rights were reserved by the court for later determination.

In January of 1982, the issues of alimony and property rights came before the court for trial. At that trial, Mrs. Haislip testified on her standard of living and certain alleged items of marital property. At the conclusion of the first day of trial, a conference was held with the trial judge who indicated that he had reviewed the case and was inclined to award Mrs. Haislip alimony for only three years.

Following the conference with the court, the parties entered into settlement negotiations. As a result of these negotiations, the parties agreed to four years of nonmodifiable, nonadjustable alimony, two years at $15,000 and two years at $12,000. The marital home would be sold, and the net proceeds divided. The parties agreed to divide equally three properties, Martin's Acres, 381 Joint Venture and Old Marshall Hall. In addition, Mrs. Haislip was to receive approximately $108,000 as a monetary award to be paid over six years starting in 1982 at $18,000 per year. Upon the completion of the payment, the jointly held stock of Peoples Security Bank would be conveyed to Mr. Haislip.

In December of 1983, Mr. Berman wrote Mrs. Haislip advising her that if she was not rehabilitated during her four year alimony term, she could petition the court to extend the term. The letter further advised her that she must file such a petition within the four-year period.

In August of 1984, Mrs. Haislip retained new counsel, Steven Friedman. Mr. Friedman stated that Mrs. Haislip asked him to move for an extension of alimony payments. Although Mr. Friedman thought the stipulations' provisions, "nonmodifiable, nonadjustable," meant that the alimony agreement could not be extended, he nevertheless attempted to obtain an extension. He was unsuccessful. Mr. Friedman charged Mrs. Haislip $300 for his services.

In May of 1985, Mrs. Haislip filed a legal malpractice complaint against Mr. Berman and his law firm, alleging breach of contract and negligence. The allegations central to the issues on appeal involve alimony, rights to marital property and costs incurred as a result of Mr. Berman's advice. Specifically, she contends Mr. Berman failed to conduct adequate discovery on the value of the assets and hence she received less in settlement than she should have. On appeal, appellants do not claim that the discovery was adequate. Mrs. Haislip also claims that she was damaged as a result of his advice relative to the extension of alimony, arguing that she should have received indefinite alimony.

In the malpractice case, the jury rendered a special verdict with questions and answers. These questions were in three separate categories:

## I.

1. Q. "Do you find that the Defendant was negligent in failing to seek pendente lite alimony for the Plaintiff?" A. "[Y]es."

2. Q. "Do you find the Plaintiff sustained damages as a result of the Defendant's negligence in failing to seek pendente lite alimony?" A. "[Y]es."

3. Q. "What damages do you find the Plaintiff sustained as a result of the Defendant's negligent failure to seek pendente lite alimony?" A. "... $2600."

## II.

1. Q. "Do you find that the Defendant was negligent in failing to pursue formal discovery concerning Mr. Haislip's assets and income?" A. "[Y]es."

2. Q. "Do you find that the Defendant was negligent in failing to employ an expert or experts to evaluate Mr. Haislip's assets?" A. "[Y]es."

3. Q. "Do you find that the Defendant was negligent in presenting Mrs. Haislip's case to the Court on January 25, 1982?" A. "[N]o."

4. Q. "Do you find as a result of the Defendant's negligence that Mrs. Haislip failed to receive an equitable distribution of the marital property." A. "[Y]es.

"The amount of these damages as found by the jury is $72,682.50."

5. Q. "Do you find as a result of the Defendant's negligence that Mrs. Haislip failed to receive an award of permanent alimony?" A. "[N]o."

### III.

1. Q. "Do you find that the Defendant was negligent in advising the Plaintiff that the Court had the authority to extend the alimony payments that the parties had agreed to on January 26, 1982?" A. "[Yes]."

2. Q. "Do you find that the Plaintiff sustained damages as a result of the Defendant's negligence in advising her that she could seek an extension of the alimony payments that the parties had agreed to on January 26th, 1982?" A. "[Y]es."

3. Q. "What damages do you find the Plaintiff sustained as a result of the Defendant's negligence in advising her that she could seek an extension of the alimony payments agreed to on January 26th, 1982?" A. "The damages awarded are $300."

Following the jury verdict in the legal malpractice trial, Mr. Berman and Pickett, Houlon & Berman appealed. They contest the verdict in categories II and III. They raise four questions:

"I. Whether the trial court improperly denied Appellants' Motion for Directed Verdict when the Appellee failed to produce sufficient evidence regarding the identity and value of alleged marital property.

"II. Whether the trial court improperly denied Appellants' Motion for Separate Trial on the issues of alimony and marital property disposition.

"III. Whether the trial court acted improperly by failing to instruct the jury that the Appellee had the burden

of proving the identity and value of the items Appellee alleged constituted marital property.

"IV. Whether Appellant Berman's advice was correct as a matter of law when he advised Appellee that she possessed the right to seek an extension of alimony payments."

Mrs. Haislip cross-appealed and raises one question:

"Whether the trial Court properly excluded post-January 26, 1982 evidence regarding of [sic] the Haislips' respective standards of living."

## SUFFICIENCY OF THE EVIDENCE

■ In order to recover based on legal malpractice, the claimant must establish: "(1) the attorney's employment; 2) his neglect of a reasonable duty; and (3) that such negligence resulted in and was the proximate cause of loss to the client." *Kendall v. Rogers,* 181 Md. 606, 611, 31 A.2d 312 (1943); *Glasgow v. Hall,* 24 Md.App. 525, 529, 332 A.2d 722 (1975).

■ In the case *sub judice,* appellants do not contest the employment or neglect elements but contend that appellee did not establish that appellants' negligence resulted in and was the proximate cause of her loss. Appellants primarily contend that to do so, appellee was required to "prove that she would have prevailed in the underlying divorce action but for the alleged acts or omissions of the appellants." Appellee claimed that appellants' actions caused her to receive less than an equitable share of the marital property. Thus, appellants assert that appellee must affirmatively prove this alleged equitable share. Appellants insist that appellee failed in her proof in that she did not identify *all* the marital assets, did not value *all* the marital assets, did not identify the source of funds, and did not classify the debt. Appellants conclude that because appellee failed to identify and value all the marital property the jury was barred from finding that she was entitled to recover. We disagree.

The case *sub judice,* while implicating marital property laws, is a malpractice action. The primary focus is therefore on whether appellee met her burden to survive a directed verdict motion in a legal malpractice case. In order to understand the damages claimed in the legal malpractice case, it is necessary to examine the Marital Property Act.[1] This Act forms the basis for a monetary award in a divorce case.

### —Marital Property Act—

Maryland defines marital property as "property, however titled, acquired by 1 or both parties during the marriage." Md.Fam. Law Code Ann. § 8–201(e)(1) (1984).[2] Marital property does not include property acquired before marriage, acquired by gift or inheritance from a third party, or excluded by valid agreement. In addition, any property directly traceable to these sources is excluded. Md. Fam.Law Code Ann. § 8–201(e)(2) (1984). In a divorce proceeding where property disposition is at issue, the party asserting a marital property interest in specific property has the burden of producing evidence as to the identity and value of that property. *Green v. Green,* 64 Md.App. 122, 139, 494 A.2d 721 (1985). The court must then follow a three-step process when disposing of the marital property. First, if there is a dispute as to whether certain property is marital property, the court shall determine which property is marital property. § 8–203(a). In resolving that dispute, the source of the funds rule may be applicable. In applying the rule, we consider not only which spouse contributed the funds but also whether the ultimate source was marital or nonmarital. *Grant v. Zich,* 300 Md. 256, 477 A.2d 1163 (1984); *Harper v. Harper,* 294 Md. 54, 448 A.2d 916 (1982).

---

1. Maryland's Property Disposition in Divorce and Annulment Act, Md.Code Ann. (1974, 1980 Repl.Vol. & 1981 Cum.Supp.). §§ 3–6A–01 through 3–6A–07 of the Courts and Judicial Proceedings Article.

2. The negligent acts complained of occurred prior to the adoption of the Family Law Article and the sections referred to appear in Md. Code Ann. § 3–6A–01 *et seq.* The codification and subsequent amendments affected no pertinent change.

Secondly, it must determine the value of such property. § 8–204. Finally, it "may grant a monetary award as an adjustment of the equities and rights of the parties concerning marital property, whether or not alimony is awarded." § 8–205(a). In making such a monetary award, the court must consider ten factors, as set forth in the statute. § 8–205(a). *See, e.g., Schweizer v. Schweizer,* 55 Md.App. 373, 375, 462 A.2d 562 (1983), *modified on appeal,* 301 Md. 626, 484 A.2d 267 (1984). Only those marital assets which have been sufficiently identified and valued can be considered in any court award. *Green,* 64 Md.App. at 139, 494 A.2d 721. Appellants claim that the trial court ought to have granted their motion for a directed verdict because appellee's evidence as to the identity and value of marital property was inadequate as a basis for a monetary award and hence insufficient to go to the jury.

### —Standard of Review—

In reviewing a trial court's grant of a motion for judgment notwithstanding the verdict, the evidence and all reasonable inferences which can be drawn from it must be considered in the light most favorable to the party opposing the motion. *Impala Platinum, Ltd. v. Impala Sales, Inc.,* 283 Md. 296, 328, 389 A.2d 887 (1978). Only where reasonable minds cannot differ in the conclusions to be drawn from the evidence, after it has been viewed in the light most favorable to the plaintiff, does the issue in question become one of law for the court and not of fact for the jury. *Burns v. Goynes,* 15 Md.App. 293, 301, 290 A.2d 165 (1972), *cert. denied,* 410 U.S. 938, 93 S.Ct. 1398, 35 L.Ed.2d 603 (1972). We, therefore, review the evidence elicited in the malpractice action relating to the identity and value of marital property with those principles in mind.

### —Evidence of Identity of Marital Property—

Appellee testified that neither she nor her husband had brought any significant assets into the marriage and that their standard of living at the beginning of the marriage had been quite modest. While Mr. Haislip had brought a

car and approximately $8,000 to $9,000 into the marriage, appellee inherited during the marriage approximately $8,000 from her mother. Thus, the parties' contributions of nonmarital property were about even. Appellee stated that, from the date of their wedding until their separation in 1980, Mr. Haislip's law practice prospered and he became active in banking, real estate and other investments. By the time of the divorce in 1982, the Haislips had substantial interests in a number of business enterprises. Other marital assets included the family home, 9,691 shares of Peoples Security Bank stock, and an array of personal property. While appellee admitted that her understanding of the parties' various real estate holdings was not extensive, and that she did not personally know their value, she identified a number of those assets at trial. These were also identified through the introduction of a number of financial statements. Several additional assets were also identified through these financial statements.[3] Appellee's identification of each asset was corroborated by the Haislips' joint tax returns from 1979 and 1980. Finally, there was testimony that in 1963 Mr. Haislip helped organize the People's Security Bank and that he subsequently purchased 9,691 shares of its stock. By appellee's uncontroverted testimony, all of these were marital property.

Appellants argue that the trial court's confusion over the identity of marital assets is reflective of the insufficient evidence which was before the jury. They highlight the court's confusion by quoting a statement by the trial judge made outside the presence of the jury:

"Prospect Park Apartments, I have not the foggiest idea of what it is, nor do I know what Woodyard Road Joint Venture is other than what I am reading on this financial

---

**3.** Appellee's witness, Marlin Husted, also identified a marital asset, namely a five percent interest in a partnership known as Bank Building Associates, acquired no earlier than late 1978. His identification of this asset was corroborated by Mr. Haislip's September 30, 1981 financial statement, admitted into evidence at trial.

statement, or Henson Valley, or these two lots in Capital Heights."

In fact, Prospect Park Apartments, Woodyard Road Joint Venture, and Henson Valley Development Corporation were each identified three separate times. First, appellee identified them in her testimony. Second, each was listed on the Haislips' 1980 joint tax return. Finally, each appeared in the four financial statements introduced into evidence. The Capital Heights property was also identified through the four financial statements, referred to as "2 Lots—Central Ave. across from proposed Metro Station."

It is apparent that the court's frustration with the assessment of damages stemmed from the fact that questions relating to marital property arose without the convenience of having testimony from both parties to the marriage. The court expressed itself on this issue as follows:

"It is just a difficult ballgame all together in this type of case to try to evaluate marital property than it would be in a domestic case in evaluating marital property where both of the parties to the marriage are parties to the case. Both of their lawyers are here. I can say to their lawyers get me this information. I need this information to make my decision." [4]

The absence of Mr. Haislip and the time lapse of almost five years between the property disposition hearing and the trial of appellee's case against appellants for malpractice increased the complexity of the instant litigation. It certainly made identification and valuation of the marital property more difficult.[5] Section 8–203(a) expressly provides

---

**4.** At trial, appellants claimed that, because of the equitable nature of the underlying matter, the court and not the jury should determine damages. The court rejected appellants' argument. The court did agree to assume the negligence of appellants and independently evaluate the facts and, outside the presence of the jury, report its assessment of damages. The trial court correctly reasoned that if it was reversed on this issue, it would not be necessary to retry the case.

**5.** As appellee so aptly points out, "[I]t is ironic that Appellants accuse Appellee of failure to identify marital property with the degree of

that the court shall determine which property is marital property, *"if there is a dispute* as to whether certain property is marital property." (Emphasis added.) To the extent that appellee identified property of the marriage, other than the law practice, the factfinder could justifiably conclude that it was marital property since no claim was made to the contrary.[6]

██ Appellants argue in their brief that "[t]he only method of identifying and valuing alleged marital property is to ascertain the source of funds used to purchase that alleged marital property." This would add an element of proof far beyond that envisioned by the Court of Appeals in *Harper v. Harper*, 294 Md. 54, 448 A.2d 916 (1982), when it established the "source of funds rule." If a party contends property acquired during the marriage is other than marital, the court will look to the source of the funds used to acquire it in order to determine what percentage, if any, is marital. *Harper*, 294 Md. at 80, 448 A.2d 916. In this case, no evidence was presented by appellants to suggest that any of the property identified in appellee's case was non-marital. Nor was there any suggestion that this was an issue in the underlying divorce action, outside of the ex-husband's interest in his law practice.[7] Hence, the source of the funds was not an issue in determining what was marital property in this appeal.

#### —Evidence of Value of Marital Property—

██ Appellee produced sufficient evidence of the value of the Haislips' marital property. Appellee relied on the testimony of James Fielding and Marlin Husted, the financial

---

certainty necessary in a domestic relations action when a jury has found that it was Appellants' negligent representation which foreclosed Appellee from her only opportunity to identify marital assets in the domestic proceeding."

**6.** Appellee's uncontroverted testimony was that Mr. Haislip had not brought any property into the marriage save a small amount of cash.

**7.** The law practice is not an issue in this appeal.

statements, and the tax returns in evidence. Mr. Fielding, an accountant who served as an expert witness for appellee, testified that he believed the September 30, 1981 financial statement, showing Mr. Haislip's net worth at $530,084, to have been undervalued by at least $70,000. Moreover, Mr. Fielding opined that the listed values of the law practice, Henson Valley Development Corp., Woodyard Road Joint Venture and the Peoples Security Bank stock were too low as reflected on that statement. Appellee also called Mr. Marlin Husted, ex-president of Peoples Security Bank, to testify as to his opinion concerning the value of Mr. Haislip's bank stock at the time of the divorce. He testified on direct examination as follows:

"Q. Do you know what the book value of Peoples Security Bank was as of January 26, 1982?

"A. Well, not certain, but it would be somewhere, I would think, between 28 and $30 a share....

"Q. Do you have an opinion within a reasonable degree of certainty, based on your experience, Mr. Husted, as to the correct multiple that might be utilized in relating book value to actual value as of January 1982, for the common stock of Peoples Security Bank?

"A. The—my opinion in that time frame, as it relates to the value of the bank in the—in an atmosphere of ceiling [sic] because that was the beginning of a wave of the sale of banks, my opinion at that time would have been that the value should have been at least one and a half times book, at a minimum."

Appellants noted, in their cross-examination of Mr. Husted, that Peoples Security Bank had offered its stock for sale to employees and existing shareholders for $30 a share in 1981. This did not change Mr. Husted's opinion that the value of Mr. Haislip's stock in January of 1982 was at least one-and-one-half times the book value:

"Q. In your opinion, Mr. Husted, is there any difference in the value of stock offered for sale to employees under a stock option plan, and the value of stock held in a 10,000

or 14,000 share lot owned by somebody such as yourself or Mr. Haislip? ...

"A. Absolutely there is a difference.

"Q. Why is that, sir?

"A. Because a two and a half or three percent interest in a corporation, that block of stock is conceived to have some degree of control, at least with other similar blocks of stock, and therefore it is worth more."

■ Appellants claim that appellee produced no evidence of marital debt. They argue that debt must be considered when determining the value of marital property. Thus, appellants contend that appellee's failure to introduce such evidence renders the marital property incapable of correct valuation. We disagree.

Appellants would have us hold appellee accountable for both the proving of the value of the marital property and the reducing of that value because of marital debt. In essence, appellants want appellee to not only prove her case, but prove their case too.

In *Schweizer v. Schweizer,* 301 Md. 626, 484 A.2d 267 (1984), the Court of Appeals held that once marital property has been identified and valued, its value is adjusted downward by the amount of the marital debt. *Schweizer,* 301 Md. at 637, 484 A.2d 267. It is the obligation of the party asserting a marital property interest in specific property to produce evidence as to the identity and value of that property. *Green,* 64 Md.App. at 139, 494 A.2d 267. Once that party makes out a prima facie case, the burden of producing evidence to refute those claims shifts to the other party. *District Heights Apartments v. Noland Co.,* 202 Md. 43, 50–51, 95 A.2d 90 (1952); *c.f. Randolph v. Randolph,* 67 Md.App. 577, 508 A.2d 996 (1986).

Here, appellee affirmatively described and valued numerous marital assets. That having been done, the burden of introducing contrary evidence to lower that value by the amount of marital debt shifted to appellants. Appellants offered no evidence substantiating the identity or value of

marital debt. Thus, the effect of the existence of any marital debt is not an issue in this case.

### —Burden in Malpractice Cases—

In order for appellee to demonstrate that the disposition of marital property negotiated by appellants on her behalf was inequitable as a result of appellants' negligence, it was necessary for her to satisfy a jury that she would have fared better had she been given adequate representation. Appellants incorrectly argue that since appellee did not identify and value all of the marital property, she failed to prove her underlying cause of action. Maryland case law supports the proposition that the trial court should omit alleged marital items from its determination of marital property if there is insufficient evidence as to the identity and value of the alleged marital assets. *Green v. Green,* 64 Md.App. 122, 139, 494 A.2d 721 (1985). If the property is not evaluated on the record, the court may not make an award based on that property. *Komorous v. Komorous,* 56 Md.App. 326, 330, 467 A.2d 1039 (1983). Therefore, in the case *sub judice,* even if appellee failed to identify and value *all* marital property, this does not mean that she did not establish her entitlement to any monetary award. It does mean that only that property which *was* sufficiently identified and valued could be considered in determining the value of the monetary award.

In a malpractice action based on negligence, the claimant may only recover those damages that are affirmatively proved. *Jones v. Malinowski,* 299 Md. 257, 269, 473 A.2d 429 (1984). The claimant must prove the damages with "reasonably certainty," and they may not be based on "speculation and conjecture." *Lazorcak v. Feuerstein,* 273 Md. 69, 75, 327 A.2d 477 (1974); *Suburban Trust Co. v. Waller,* 44 Md.App. 335, 348, 408 A.2d 335 (1979).

In the case *sub judice,* we have a unique situation. Appellants agree that the basis for the jury's award was an asset identified as marital property and evaluated in the testimony. Their motion for judgment notwithstanding the

verdict indicates that appellants concede precisely how the verdict was arrived at:

> "Simple mathematics reveals the basis for the jury's award. On his September 1982 [sic] financial statement Mr. Haislip indicated that he held 9,691 shares of People's [sic] Security stock, valued at $30.00 per share. Counsel argued, on the basis of Marlin Husted's testimony, that the real value of these shares was $45.00 per share. By taking the difference in value ... one obtains $145,365.00. Taking half share of this amount, assuming Plaintiff receives a 50% marital share, you arrive at the jury's award of $72,682.50."

The trial judge agreed with this analysis, and found it to be supported by a writing from the jury:

> "That's exactly what they did.... I don't think there is any question. If you read the jury issues, there is some scribbling above the figure, and at the time I read the jury issue I looked at the scribbling, didn't pay any attention to it, but I'm looking at it now and it appears to be the word stock. So that's what they did, all the damages were based on the value of the stock."

Appellants' and the trial judge's analysis of the jury award provides more than sufficient support for the jury's decision. Appellee's unrefuted testimony established that, other than the small amounts that she and her husband had brought into the marriage, everything else owned by the Haislips at the time of separation fell within the statutory definition of marital property. Appellee identified the bank stock and called Marlin Husted, who testified that the bank had been founded in September of 1963, several years after the Haislips' marriage. Existence of the bank stock as marital property was corroborated by various financial statements, as well as the Haislips' 1979 and 1980 joint income tax returns. Mr. Husted opined that he believed "book value" of the stock to be between $28 and $30 per share and that actual value of Mr. Haislip's block was one and one-half times that amount, at a minimum. Mr. Field-

ing also testified that the value of the bank stock exceeded $30 per share.

The jury verdict is consistent with both the divorce and malpractice laws of this State. Under *Green*, the fact finder can only consider that property which was adequately identified and valued in determining a monetary award. *Green*, 64 Md.App. at 139, 494 A.2d 721. Under *Jones*, the claimant is only entitled to those damages that are affirmatively proved with reasonable certainty. *Jones*, 299 Md. at 269, 473 A.2d 429. Here, the jury found that appellee had sufficiently shown that the Peoples Security Bank stock was marital property which should have been valued at $45.00 per share. Therefore, we hold that the jury could award damages based on that evidence.

If we were to adopt appellants' concept of appellee's burden in a malpractice case, we would have to hold that a claimant would have to deal with the underlying case by putting on a case, then putting on the best case for the other side to refute his or her own claim. That has not been the law nor do we propose to adopt such a requirement.

## JURY AWARD OF DAMAGES

Appellee brought a legal malpractice action against appellants alleging breach of contract and negligence. Having requested a jury trial pursuant to Rule 2–511,[8] it would appear that appellee was entitled to a jury trial concerning all issues of fact. Appellants claim that the issue before this court

> "is whether the decision of the trial court, sitting in equity without a jury in the underlying equity case, making a marital property award, should be treated as a matter of fact (concerning which the Appellee would be

---

8. Rule 2–511 provides in part:
 "(a) Right Preserved.—The right of trial by jury as guaranteed by the Maryland Constitution and the Maryland Declaration of Rights or as provided by law shall be preserved to the parties inviolate."

entitled to jury trial) or a matter of law (which ought to be determined by the Court, acting without a jury)."

Appellants argue that the decision should be treated as a matter of law because the underlying dispute over the disposition of marital property would have been decided solely by a judge sitting in equity. According to appellants, a judge sitting in a domestic proceeding while considering the statutory factors "is bound only by his own morality, honesty and conscience." They contend that the jury could never be adequately instructed so as to permit a finding by the jury as to what the equity court in the underlying action would have done absent appellants' negligence. Thus, because of the equitable nature of the damage issue, the court and not the jury should have determined the damages. We disagree.

Even though our Legislature has given the court exclusive jurisdiction over matters affecting the family, the present action is not a divorce action. This is a suit charging an attorney with negligence, and the Maryland Constitution guarantees a jury trial if a party request one.[9] While the right to trial by jury is a constitutional one, no similar guarantee exists to trial by the court.

Thomas Jefferson described the jury as "the only anchor ever yet imagined by man, by which a government can be held to the principles of its constitution." *Lucky Ned Pepper's Ltd. v. Columbia Park & Rec. Assoc.*, 64 Md.App. 222, 225, 494 A.2d 947 (1985), quoting Thomas Jefferson, *Letters to Thomas Paine* (1789). Maryland's constitutional provision outlining the right to a jury trial states in part:

"The inhabitants of Maryland are entitled to the common law of England, and the trial by jury, according to the course of that law."

---

**9.** According to the Maryland Constitution, "the right of trial by Jury of all issues of fact in civil proceedings in the several Courts of Law in this State, where the amount in controversy exceeds the sum of five hundred dollars, shall be inviolably preserved." Md. Const. art. 23.

Md. Const. art. 5. Consistent with that passage, our courts have long held that the right to trial by jury in civil actions remains inviolate to the extent that it existed at common law. *Knee v. Baltimore City Passenger Ry. Co.*, 87 Md. 623, 624, 40 A. 890 (1898).

The English common law courts recognized long ago that the question of negligence remains the province of the jury. In *Patterson v. Wallace*, 1 MacQ. 748 (1854); 23 L.T.O.S. 249, H.L., the issue was whether certain undisputed facts established negligence. The trial judge took the case from the jury. The House of Lords reversed, holding that it was a pure question of fact for the jury. The United States Supreme Court, in *Railroad Co. v. Stout*, 84 U.S. (17 Wall.) 657, 665, 21 L.Ed. 745 (1873), relying on *Patterson*, also held that the question of negligence is one for the jury. The Court said:

> "It is assumed that twelve men know more of the common affairs of life than does one man, that they can draw wiser and safer conclusions from admitted facts thus occurring than can a single judge....
>
> "We find ... that ... it is for the jury and not for the judge to determine whether proper care was given, or whether they establish negligence."

*Railroad Co.*, 84 U.S. at 664.

In accordance with this tradition, Maryland courts hold that negligence is a question of fact to be determined by the jury. *Curley v. General Valet Service*, 270 Md. 248, 264, 311 A.2d 231 (1973). In *Curley*, the Court upheld the jury's finding of negligence and the subsequent damage award. The Court said: "Maryland has gone almost as far as any jurisdiction that we know of in holding that meager evidence of negligence is sufficient to carry the case to the jury." *Curley*, 270 Md. at 264, 311 A.2d 231.

▮ In the case *sub judice*, appellee brought a legal malpractice action based on negligence. Therefore, we hold that under the Maryland Constitution and case law, appellee was entitled to a jury trial.

Ordinarily, in a negligence action, the jury properly determines any damages. *See Ralph Pritts & Sons, Inc. v. Butler,* 43 Md.App. 192, 403 A.2d 830 (1979); *Jones v. Malinowski,* 299 Md. 257, 473 A.2d 429 (1984). This case is complicated by the fact that in assessing damages, the jury was required to consider principles of Maryland divorce law which statutorily have been relegated to the province of the equity court. Appellants claim that because the underlying dispute over the disposition of marital property would have been decided solely by a judge sitting in equity, the court, as a matter of law, should have determined the damages. We reject appellants' argument.

The distinction between issues of law and fact in legal malpractice cases has been addressed in other jurisdictions. In *Chocktoot v. Smith,* 280 Or. 567, 571 P.2d 1255 (1977), the Supreme Court of Oregon, en banc, characterized the issue before it as follows:

"Who, judge or jury, must decide whether an attorney's negligence harmed his client, and upon what evidence, when the negligence concerned an issue decided by the court rather than a jury."

*Chocktoot,* 571 P.2d at 1256.

In *Chocktoot,* plaintiff claimed that the attorney had negligently represented a client in an earlier action involving the client's right to a share of a decedent's estate.[10] After directing a verdict for plaintiff on the issue of negligence, the trial court ruled that it had the responsibility to decide whether the outcome of the client's heirship was changed by defendant's negligence. On appeal, appellee argued that for those actions which were tried before the court in the first instance, damages resulting from negligent representation should also be assessed by a judge. Judge Linde, writing for the Court rejected this argument:

---

**10.** The client had died before suit was brought. Plaintiff, as personal representative, claimed that client was decedent's son but that as a result of defendant's failure to discover and present material evidence to that effect, client had been denied recovery at the earlier proceeding. *Chocktoot,* 571 P.2d at 1256.

"... (appellee's proposal) would withdraw from the jury in the malpractice trial the evaluation of the probable outcome of purely factual disputes in all nonjury cases, including all equity, probate, or administrative proceedings. ... *there is no reason why the jury cannot replicate the judgment of another factfinding tribunal, whatever its composition.*"

*Chocktoot,* 571 P.2d at 1259 (emphasis supplied).

Instead, the court relied on the distinction between law and fact to determine whether the question of damages was properly before the jury or the court:

"The question what decision should have followed in the earlier case if the defendant attorneys had *taken proper legal steps* is a question of *law* for the court.... The question what outcome should have followed if defendants had *conducted a proper investigation, presentation (or exclusion) of evidence, or other steps bearing on a decision based on the facts remains a question of fact for the jury....*"

*Chocktoot,* 571 P.2d at 1259 (emphasis supplied).

In *Helmbrecht v. St. Paul Ins. Co.,* 122 Wis.2d 94, 362 N.W.2d 118 (1985), the Wisconsin Supreme Court examined the roles of judge and jury in a case factually similar to the present one. *Helmbrecht* involved an action for legal malpractice arising out of an attorney's negligent representation of a client in her divorce action. At the underlying trial, the attorney had appeared with his client but with no other witnesses to testify to the value of the marital assets or the client's need for maintenance. He then entered into a stipulation with opposing counsel which client became dissatisfied with, leading to her action against him. *Helmbrecht,* 362 N.W.2d at 122. The jury returned a verdict in favor of appellee and awarded $250,000 in damages. The trial court subsequently granted appellant's motion for judgment notwithstanding the verdict. The Court found that there was insufficient evidence to show that, had the divorce proceeding come to trial, the judge would have

awarded anything more than the appellee received from the stipulation.

Wisconsin, like Maryland, has statutorily granted the court, sitting without a jury, exclusive jurisdiction over all actions affecting marriage. On appeal, appellants in *Helmbrecht* argued that the trial court erred in allowing the jury to decide the issue of causation and damages. Appellants claimed that because the divorce suit would have been tried before a trial judge and not a jury, the jury in the legal malpractice action should not be allowed to determine the damages.[11] The Wisconsin Supreme Court rejected the appellant's argument in spite of the fact that the Legislature had given the court exclusive jurisdiction over family matters. *Helmbrecht*, 362 N.W.2d at 134. The Court, relying heavily on *Chocktoot*, said, "The focus is not on whether the original action is tried before a jury, but, rather, whether the issue remaining in the malpractice action is one of law or one of fact." *Helmbrecht*, 362 N.W.2d at 134. The question of damages was considered to be an issue of fact properly before the jury. *Helmbrecht*, 362 N.W.2d at 134. Finally, the Court held that in determining damages, the jury did not have to decide what the divorce judge in the underlying case would have done; it had to decide what a reasonable judge would have done had the attorney not been negligent. *Helmbrecht*, 362 N.W.2d at 125.

We agree with the analysis of the Oregon and Wisconsin courts. In the case *sub judice*, appellee brought a legal malpractice action based on negligence. Having requested a jury trial, she was entitled to a jury determination on all

---

**11.** Appellants offer no case law in support of their argument. The first case they cite, *Ex Parte Reynolds,* 447 So.2d 701 (Ala.1984), involved the right to a jury trial when the complaint raises equitable issues and the amended complaint involves legal issues. Appellants' other case, *Olson v. Aretz,* 346 N.W.2d 178 (Minn.App.1984), supports the proposition that a plaintiff in a legal malpractice action based on negligence is entitled to a jury trial despite the presence of underlying equitable issues.

issues of fact. In Maryland, the questions of negligence and damages are issues of fact rightfully before the jury.

Appellants have not challenged the sufficiency of the jury instruction regarding the assessment of damages. Significantly, appellants *did not* argue that the court did not adequately instruct the jury; they argued that the court *could not* adequately instruct the jury.[12] In determining damages, the jury had the assistance of expert testimony and evidence of the marital relationship and marital assets. In oral arguments before this Court, appellants admitted that the judge spent between one and two hours instructing the jury on Maryland's marital property law. In addition, with the aid of a chart, the judge explained to the jury in great detail the statutory factors that must be considered in making a marital award. Appellants do not contend that this part of the jury instructions was incorrect.

We are confident that when a jury is properly instructed on the law, as it was in this case, it can reasonably apply the law to the particular facts involved and resolve the issue of what a *reasonable* judge would have awarded in the initial divorce action. We see no reason why the jury could not substitute its judgment for the fact finder of the initial action, be it a jury, judge or domestic relations master. Throughout the country, juries decide issues every day no more complicated than what a reasonable judge would have awarded as property division and maintenance.[13] Therefore, we hold that the trial court was correct in submitting

---

**12.** Appellants imply that, in evaluating the evidence, there is a specific figure all reasonable judges would concur on as an appropriate monetary award. That is just not so. The potential for a great latitude in monetary awards is one of the strengths (or perhaps a weakness) of the marital property laws. There is rarely, if ever, going to be only one figure that can be deemed an "equitable" award. Hence, ordinarily the amount cannot be said to be determined as a matter of law.

**13.** It is hard to conceive of issues more complex than determining the damages resulting from infliction of emotional distress or sorting out multiparty, multicount contract suits, yet juries are constantly given those responsibilities.

the question of damages arising from appellants' negligence to the jury.

## JURY INSTRUCTIONS

■ Appellants claim that the trial court erred in not instructing the jury "that appellee had the burden to affirmatively prove the identity and value of those items she contended constituted marital property."

Appellants did not preserve this issue for our review. At trial, appellants excepted to the court's not giving an instruction that appellee had the burden of identifying and valuing the marital property. The court brought the jurors back in and instructed them on appellee's burden of proof. The court excused the jury and asked whether anybody had any further exceptions to the instructions. Appellants' counsel responded, "Defendants' [sic] satisfied, your Honor."

Under Rule 1085, when a party has the option of objecting, his failure to do so while it is still within the power of the trial court to correct the error is regarded as a waiver estopping him from obtaining a review of the point or question on appeal. *Lohss v. State,* 272 Md. 113, 119, 321 A.2d 534 (1974). Here, appellants not only failed to object following the court's reinstructions, but stated they were satisfied with the jury instructions. Thus, appellants have waived their right to review of that point. In any event, in view of our holding that it is unnecessary to prove each item of marital property, the requested instruction would still have been properly excluded.

## EXTENSION OF ALIMONY

■ The settlement agreement in the underlying case provided appellee with four years of alimony and indicated that it was "nonadjustable, nonmodifiable." Prior to the expiration of the statutory time period, appellants wrote appellee advising her of her right to petition the court for an extension of alimony. At trial, the jury found that appellants were negligent in providing that advice and awarded appellee $300. On appeal, appellants claim that

the advice was correct as a matter of law and claim that the jury award should therefore be reversed.

As discussed earlier,[14] the jury's verdict should not be disturbed "[i]f a non-moving party offers 'any evidence competent, pertinent and coming from the legal source, legally sufficient to prove plaintiff's case.'" *Levitsky v. Prince George's County,* 50 Md.App. 484, 497, 439 A.2d 600 (1982).

We hold that appellee produced sufficient evidence to allow the jury to determine the question of appellants' negligence. First, appellant Berman's letter advising appellee of her right to petition for an extension of alimony was admitted into evidence. Second, appellee introduced the court order denying her motion for an extension of alimony. Third, Stephen Friedman, the attorney who filed the motion for an extension on appellee's behalf, testified that he did not understand how appellant Berman could have given that advice, in light of the absolute "language contained in the settlement agreement."[15] Finally, appellee's expert on the standard of care for Maryland domestic relations lawyers testified that appellant Berman's advice fell below the standard of care, because the words "nonadjustable, nonmodifiable" mean precisely what they say.

Taken together, the jury could have found that appellant Berman was negligent in advising appellee that she had a right to seek an extension of alimony.

## CROSS–APPEAL

At trial, cross-appellant claimed that, because of cross-appellee's negligence, she failed to receive an award

---

**14.** *See* Standard of Review, supra.

**15.** Mrs. Haislip sought and was awarded damages resulting from pursuing a modification of her alimony. The jury found that this claim for modification was not a valid one. Whether she should have been able to recover for expenses resulting from pursuing a claim which might have violated Rule 1–341 was never raised by cross-appellees.

of indefinite alimony. The jury disagreed and specifically found that cross-appellee was not responsible for cross-appellant's failure to receive indefinite alimony. On appeal, cross-appellant claims that this issue should be retried because evidence of the Haislips' respective standards of living after January 26, 1982 was not admitted. Cross-appellant argues:

> "[D]ue to the exclusion of major portions of Cross–Appellant's evidence by the trial court, the jury was not allowed to consider whether there was a substantial enough disparity between the standards of living enjoyed by the Haislips subsequent to divorce to warrant an extension of the four years' alimony provided for in the agreement, absent Cross–Appellee Berman's characterization of such alimony as 'nonmodifiable, nonadjustable.' "

The fundamental defect in cross-appellant's argument is her misunderstanding of Maryland law relating to alimony. The effect of the Haislips' financial disparity at the time of trial is relevant as to whether the court would award indefinite alimony. Later disparity generally is not relevant in determining whether to award an extension of alimony.

### —Indefinite Alimony—

Under the 1980 revisions of the Maryland marital law, the court can follow one of two avenues in awarding alimony—indefinite or for a term. Unless the party receiving alimony meets one of the two preconditions to an award of indefinite alimony, the court will only award rehabilitative alimony. Under § 11–106(c), the court can grant a party indefinite alimony. This type of alimony lasts until one party dies, the party receiving the alimony remarries, or until modified by the court. Under that section, the court can only grant this type of alimony under specific circumstances. Number one, if because of either age or health it is evident to the court that the party receiving alimony "cannot reasonably be expected to make substantial progress toward becoming self-supporting." § 11–106(c)(1). The other exception is if "even after the party seeking alimony will have made as much progress toward becoming self-supporting as can

reasonably be expected, the respective standards of living of the parties will be unconscionably disparate." § 11–106(c)(2).

In the case *sub judice*, cross-appellant argues that because the court excluded all post-January 1982 evidence the jury lacked sufficient evidence to determine whether she failed to receive indefinite alimony because of cross-appellee's negligence. We disagree.

If the court decides to award indefinite alimony, that decision is made at the conclusion of the trial on the issue of the disposition of the marital property. In resolving whether to award indefinite alimony, the court considers only that evidence introduced at the trial. In this case, the trial was in January of 1982, therefore, the court would only have before it the parties' pre-January 1982 financial information. It would not have had the parties' *post*-January 1982 financial information because that was not yet in existence. Therefore, even if cross-appellant would have received indefinite alimony but for cross-appellee's negligence, the court in making that award could not have based it on the disparity of the parties' post-January 1982 financial status. It would have been awarded based only on the financial information introduced during the January 1982 hearing.[16]

### —Extension of Alimony—

In her brief, cross-appellant claims:

"It is important to note that there is not any serious question that Mr. Berman did give bad advice on this point. The jury found him negligent for advising Cross–Appellant that the Court had authority to extend the alimony payments. ... That being the case, the critical question was whether Cross–Appellant sustained damages as a result of this erroneous advice. The jury's decision that she did not resulted from Cross–Appellant's

---

**16.** Judge Taylor, who presided at the divorce trial, testified in the malpractice case. He stated that he had only been willing to give cross-appellant two, possibly three years of alimony.

inability to sustain her burden of proof, due to the trial court's evidentiary rulings."

Cross-appellant correctly states that the jury found Berman negligent in advising her that the court had the authority to extend the alimony payments. Cross-appellant incorrectly concludes that the jury failed to award damages on that issue because of the trial court's evidentiary rulings. In fact, the jury *did* award cross-appellant $300; ostensibly the amount of money cross-appellant spent in acting on that advice. Cross-appellant confuses the issue of whether Berman was negligent in advising her to seek an extension of alimony with the issue of whether Berman was negligent in allowing the "nonmodifiable, nonadjustable" provision to be included in the settlement agreement.

Cross-appellant was awarded rehabilitative alimony for four years. Ordinarily, under Md.Fam.Law Code Ann. § 11–107 (1984), cross-appellant would have had the right to apply for an extension of alimony, providing this was done within the statutory time period. Cross-appellant was precluded from taking advantage of that section because of the "nonmodifiable, nonadjustable" provision in the settlement agreement. The post–1982 financial information was only applicable *if* cross-appellant was eligible for an extension of alimony. At trial, the jury was not asked to consider whether Berman was negligent in incorporating the "nonmodifiable, nonadjustable" provision in the agreement. Therefore, it is not surprising that the jury did not find that Berman was negligent in regard to that provision.

Pursuant to Rule 2–522, the court required the jury to return a special verdict in the form of written findings upon specific issues. That Rule provides in part:

"If the court fails to submit any issue raised by the pleadings or by the evidence, all parties waive their right to a trial by jury of the issues omitted unless before the jury retires a party demands its submission to the jury."

Here, cross-appellant never demanded that the jury be given the question of cross-appellee's negligence in permit-

**118**

ting the "nonmodifiable" provision. In addition, cross-appellant does not argue on appeal that Berman was negligent in including that provision. Under Rule 2–522, even if cross-appellant had raised this issue on appeal, it was not properly preserved for our review.

JUDGMENT AFFIRMED. COSTS TO BE PAID FOUR–FIFTHS BY APPELLANTS/CROSS–APPELLEES AND ONE–FIFTH BY APPELLEE/CROSS–APPELLANT.